FILED

AUG 3 1 2018

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOSEPH C. BARCUS,
JAMES D. SHACKLEFORD, and
PETER J. SHIPP,

        Plaintiffs,

v.                    //    CIVIL ACTION NO. 1:17CV122
                            (Judge Keeley)

TERRY AUSTIN, Sheriff, in his
personal and official capacity, and
THE TAYLOR COUNTY COMMISSION,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 12]

On June 19, 2017, the plaintiffs, Joseph C. Barcus ("Barcus"), James D. Shackleford ("Shackleford"), and Peter J. Shipp ("Shipp") (collectively, "the plaintiffs"), filed a complaint in the Circuit Court of Taylor County, West Virginia, against the defendants, Terry Austin, Sheriff, in his personal and official capacities ("Austin"), and the Taylor County Commission ("the Commission") (collectively, "the defendants") (Dkt. No. 1-1). After removing the case to this Court (Dkt. No. 1), Austin, in his official capacity, and the Commission moved to dismiss the claims asserted against them (Dkt. No. 12). That motion is now fully briefed. For the reasons that follow, the Court **GRANTS** the motion to dismiss and **DISMISSES** Count One of the complaint as it pertains to Austin, in his official capacity, and the Commission.

BARCUS, ET AL. V. AUSTIN, ET AL.                                1:17CV122

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 12]

### I. BACKGROUND

The Court's recitation of the facts is taken from the complaint and construed in the light most favorable to the plaintiffs. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013). The plaintiffs are former employees of the Taylor County Sheriff's Department ("the Department") (Dkt. No. 1-1 at 1). Prior to their termination from the Department in December 2016, Barcus and Shackleford were employed as Courthouse Security Officers and Bailiffs at the Taylor County Courthouse, while Shipp worked as an Administrative Assistant in the Sheriff's Office. Id. at 1, 3.

Throughout 2016, the plaintiffs were actively involved in campaigning for then-Sheriff Terring Skinner ("Skinner"), who was running for re-election as a Democrat. Id. at 2. According to the complaint, the plaintiffs were, and remain, registered Democrats whose campaign activities in support of Skinner included "placing signs . . . and openly supporting him in his reelection effort." Id. In the November 2016 election, Sheriff Skinner was defeated by his Republican opponent, defendant Austin. Id. Austin had previously been a candidate in the 2012 Taylor County Sheriff's election, and was defeated by Skinner in the Democratic primary.

Id. Between the 2012 primary and the 2016 election, Austin switched party allegiance from Democratic to Republican. Id.

Sometime in November of 2016, prior to Austin's election to Sheriff, Austin informed Barcus "that he should not believe the rumors that Austin intended to fire Barcus and other Sheriff's Department employees if Austin was elected." Id. Austin assured Barcus that "he should not be concerned . . . because Barcus' job was secure," and that he "knew that Barcus did a good job in the performance of his duties." Id.

Despite these assurances, the plaintiffs allege that, following the election, Austin "informed the Commission of his intention to terminate the [p]laintiffs." Id. at 3. The plaintiffs further allege that both the Commission and the Taylor County Prosecuting Attorney subsequently informed Austin that he "should not terminate the [p]laintiffs." Id.

According to the plaintiffs, Austin was also "informed of the illegality of [the plaintiffs' terminations] . . . by and through email correspondence" from Rodney Miller ("Miller"), a retired sheriff and then-Executive Director of the West Virginia Sheriffs' Association ("the Association"). Id. at 4. The email correspondence from Miller also included a message from the Association's legal counsel, which advised Miller to "let [Austin] know that

3

termination of employees for political reasons is strictly illegal." Id. at 4, 11.

Nonetheless, on December 14, 2016, each plaintiff received written notification of his termination by correspondence signed by Austin as Sheriff-Elect. Id. at 1-2, 9-10. Pursuant to the notifications, the plaintiffs' employment with the Department was officially terminated effective January 1, 2017. Id.

In their one-count complaint, the plaintiffs allege that their terminations "violate [their] constitutional and statutory rights as defined by the West Virginia Constitution and the United States Constitution." Id. at 4. Specifically, they allege that the defendants violated their rights as protected by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, as well those protected by Article III, §§ 7, 10, and 11 of the West Virginia Constitution. Id.

Now pending is the defendants' motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted (Dkt. No. 12). In their motion, the defendants argue that the plaintiffs have failed to state a claim under 42 U.S.C. § 1983 or the West Virginia Constitution against Austin, in his official capacity, or the Commission. Id.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION TO DISMISS [DKT. NO. 12]

### II. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) allows a defendant to move for dismissal on the grounds that a complaint does not "state a claim upon which relief can be granted." When reviewing the sufficiency of a complaint, a district court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In order to be sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

### III. DISCUSSION

Although pleaded as one claim, Count One of the complaint actually raises separate claims under 42 U.S.C. § 1983 and Article III of the West Virginia Constitution (Dkt. No. 1-1 at 4). As discussed below, however, the plaintiffs have not pleaded viable claims under either § 1983 or the West Virginia Constitution against the Commission, or against Austin in his official capacity.

**A.   42 U.S.C. § 1983 Claims**

The defendants contend that the plaintiffs have failed to state a claim under § 1983 because they have not "alleged the existence of an unconstitutional policy or custom on behalf of the Commission that deprived [the plaintiffs] of their rights" (Dkt. No. 12 at 1).

   **1.   Applicable Law**

   Section 1983 provides, in relevant, part that

   [e]very person who, under color of any statute,
   ordinance, regulation, custom, or usage, of any State .
   . . subjects, or causes to be subjected, any citizen of
   the United States or other person within the jurisdiction

> thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. Thus, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979)).

To succeed on a § 1983 claim, a plaintiff must show (1) that he was deprived of a right "secured by the Constitution and the laws" of the United States, and (2) that the individual who deprived him of the right was acting under color of state law. Lugar v. Edmonson Oil Co., 457 U.S. 922, 930 (1982) (internal citations omitted). Generally, a public employee acts under color of law "while acting in his official capacity or while exercising his responsibilities pursuant to state law." Conner v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1994) (quoting West v. Atkins, 487 U.S. 42, 50 (1988)).

For purposes of § 1983, a municipality is considered a "person" and is thus subject to suit. Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978). It is well established, however, that a municipality cannot be held liable simply for employing a tortfeasor. Id. at 691. A municipality may

be subject to liability under § 1983 only if the alleged injury was caused by an identifiable municipal policy or custom. Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 403 (1997).

Notably, "[a] government policy or custom need not have received formal approval through the municipality's official decision making channels to subject the municipality to liability." Riddick v. Sch. Bd., 238 F.3d 518, 522 (4th Cir. 2000). "Nor must an 'official policy' be broadly applicable to factual circumstances likely to be repeated. To the contrary, . . . a 'governmental unit may create an official policy by making a *single decision* regarding a course of action in response to particular circumstances' so long as that governmental unit possessed 'final authority to create official policy.'" Hunter v. Town of Mocksville, N. Carolina, 897 F.3d 538, 554 (4th Cir. 2018) (emphasis in original) (quoting Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999)).

Because § 1983 was not designed to impose municipal liability under the doctrine of respondent superior, the "official policy" requirement was "intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986). Accordingly, where an alleged

8

constitutional deprivation is caused by the official actions of those individuals "whose edicts or acts may fairly be said to represent official policy," the government as an entity is responsible under § 1983. Monell, 436 U.S. at 694.

Of course, not every decision by a municipal official will subject a municipality to § 1983 liability. Rather, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur, 475 U.S. at 481. To qualify as a "final policymaking official," a municipal official must have the responsibility and authority to implement final municipal policy with respect to a particular course of action. Id. at 482-83; see also Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987) ("'[P]olicymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government.").

"The question of who possesses final policymaking authority is one of state law." Riddick, 238 F.3d at 523 (citing Pembaur, 475 U.S. at 483). In answering this question, the Court "must look to the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law." Id.

9

(quoting Jett v. Dall. Indep. Sch. Dist., 491 U.S. 701, 737 (1989)).

## 2. Analysis

As discussed above, to survive a motion to dismiss under Rule 12(b)(6), a complaint need only allege facts which, if true, "'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "The recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 403 (4th Cir. 2014) (internal citations omitted). Nevertheless, § 1983 plaintiffs seeking to impose liability on a municipality must adequately plead the existence of a policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights. Jordan by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994); Spell 824 F.2d at 1387-88.

Evaluated against these pleading principles, the plaintiffs' complaint fails to state a claim against the Commission under § 1983. Despite the plaintiffs' general contention to the contrary (Dkt. No. 16 at 1), the complaint fails to allege the existence of any municipal "policy" or "custom" for which the Commission may be

MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS [DKT. NO. 12]

held liable, and ultimately fails to allege any facts which, even if true, would buttress their legal conclusion that the Commission is liable under § 1983 for alleged violations of the plaintiffs' constitutional rights. In point of fact, the complaint's sole reference to the Commission is limited to a single paragraph in which the plaintiffs allege that "Defendant Austin approached the Taylor County Commission and informed the Commission of his intention to terminate the plaintiffs. Upon information and belief, **Austin was informed by the Commission that he should not do this**" (Dkt. No. 1-1 at 3) (emphasis added).

The Fourth Circuit has acknowledged that "courts have dismissed Monell claims when the plaintiff has alleged nothing more than a municipality's adherence to an impermissible custom." Owens, 767 F.3d at 403. Here, the plaintiffs have not even alleged that: the complaint fails to identify *any* policy or custom, express or otherwise, to which the Commission adhered or that can otherwise be fairly attributed to it. See Dkt. No. 1-1 at 1-4. In addition, the complaint fails to allege that, under West Virginia law, Austin--or anyone at all--was a "final policymaking official" upon which liability may attach. Id.

Moreover, even if the complaint were liberally construed to allege a policy or custom for which the Commission may be held liable through the decision of a person with final policymaking authority, it fails to allege liability based on a "municipal act." The Fourth Circuit has clarified that municipal liability

> depends on whether the liability asserted is based on a municipal act and not simply on the independent act of a municipal employee, **even though that employee may be acting as the final decisionmaker**. When a final decision by an employee implements municipal policy, then municipal liability may follow. **But if a final decision does not implement municipal policy, or is contrary to it, then it is not imputable to the municipality.**

Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 964-65 (4th Cir. 1995) (emphasis added).

Here, even assuming that the plaintiffs have alleged that Austin was acting as the final *decisionmaker* with respect to their terminations, the complaint makes no allegation that his decision implemented municipal policy. Rather, and to the contrary, the complaint specifically alleges that, upon learning of Austin's plan to terminate the plaintiffs, the Commission explicitly "informed [him] that he should not do this" (Dkt. No. 1-1 at 3). It further alleges that Austin thereafter terminated the plaintiffs, *contrary to* the Commission's statement. Id. at 1-2. Accordingly, the

plaintiffs have failed to allege the existence of any policy or custom implemented by Austin and imputable to the Commission.

Finally, even if the plaintiffs had identified a specific policy or custom fairly attributable to the Commission, which they have not, they failed to allege that the Commission was the "moving force" behind the alleged deprivation of their rights. See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 404 ("The plaintiff must also demonstrate that, through its *deliberate conduct*, the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights.") (emphasis in original) (quoting Monell, 436 U.S. at 649). In other words, the plaintiffs have failed to allege any causal link between a specific policy or custom and the constitutional violations alleged.

Therefore, after viewing the allegations in the light most favorable to the plaintiffs, the Court concludes that the plaintiffs have failed to sufficiently allege a municipal policy or custom that caused their injuries and, consequently, have failed to plead facts sufficient to set forth a plausible claim for liability under Monell and its progeny. It thus **GRANTS** the Commission's motion and dismisses the § 1983 claims asserted against it.

B.   **State Constitutional Claims**

The Commission further argues that the plaintiffs have failed to state a claim against it under Article III, §§ 7, 10, and 11 of the West Virginia Constitution because, even assuming that the plaintiffs' allegations are true, "the Commission could not be considered to be the proximate cause of [their] terminations" (Dkt. No. 12 at 1-2).

The parties do not dispute that West Virginia law recognizes a private cause of action, analogous to one arising under § 1983, for state constitutional violations (Dkt. Nos. 13 at 11-2; 16 at 3). See Syl. Pt. 2, Hutchison v. City of Huntington, 479 S.E.2d 649, 654 (W. Va. 1996) ("[A] private cause of action exists where a **municipality or local governmental unit causes injury** by denying that person rights that are protected by the Due Process Clause embodied within Article 3, § 10 of the West Virginia Constitution.") (emphasis added). Thus, as under § 1983, a plaintiff must allege that there was a constitutional violation, and that the municipality or local government unit caused the alleged deprivation of rights. See Kane v. Lewis, 604 F. App'x 229, 234 (4th Cir. 2015) ("[T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries *caused by* the

14

deprivation of constitutional rights. A plaintiff asserting a constitutional tort under § 1983 must therefore satisfy the familiar element of proximate causation.") (emphasis in original) (internal citations and quotation marks omitted).

Here, the plaintiffs have simply failed to allege any conduct by the Commission which could have plausibly "caused" the decision to terminate them. Indeed, the Commission's conduct, as alleged by the plaintiffs, would support the contrary conclusion: According to the complaint, the Commission informed Austin that the plaintiffs' employment should *not* be terminated (Dkt. No. 1-1 at 3). And, as observed earlier, the complaint makes no further allegations about the Commission or its conduct in relation to the plaintiffs' terminations. Accordingly, the plaintiffs have failed to plead facts sufficient to plead a plausible claim against the Commission for any alleged state constitutional violations. The Court therefore **GRANTS** the Commission's motion and **DISMISSES** the claims asserted against it under Article III of the West Virginia constitution.[1]

---

[1] Because the Court dismisses these claims based on the plaintiffs' failure to allege facts plausibly showing that the Commission's acts violated their constitutional rights, it need not address the unsettled question of whether monetary damages are an available remedy for violations of Article III of the West Virginia Constitution. See, e.g., Spry v. W. Virginia, No. 2:16-CV-01785,

C.  **Official Capacity Claims**

Turning next to the plaintiffs' claims against Austin, Austin argues that the claims asserted against him in his official capacity as the Sheriff of Taylor County must be dismissed because "an official capacity claim is simply another way of asserting a claim against a government entity" (Dkt. No. 12 at 2). The plaintiffs' official capacity claims therefore should be dismissed for the same reasons that claims against the Commission should be dismissed. Id.; see also Dkt. No. 13 at 13-14.

Courts have long recognized the inherent distinction between personal and official capacity suits. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Scheuer v. Rhodes, 416 U.S. 232, 237-238 (1974)). Official capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Id. at 165-66 (quoting Monell, 436 U.S. 658 at 690, n.55) (internal quotation marks omitted). Therefore, so

---

2017 WL 440733, at *9 (S.D.W.Va. Feb. 1, 2017)(notifying the parties that the court intended to certify this question to the West Virginia Supreme Court if the plaintiffs continued to proceed under a theory of liability predicated on alleged violations of Article III of the West Virginia Constitution).

long as "the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." Id. at 166 (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985)).

"In West Virginia, it is the county commission that is authorized to sue or be sued." Ball v. Baker, No. 5:10-CV-00955, 2012 WL 4119127, at *10 (S.D.W.Va. Sept. 18, 2012); W. Va. Code § 7-1-1(a). To that end, any claim against the Office of the Sheriff of Taylor County should be against the County governing body, i.e., the Commission. The Court therefore considers the official capacity claims asserted against Austin as claims against the Commission.[2] See id. at *10. Moreover, notwithstanding the fact that claims asserted against Austin in his official capacity are essentially duplicative of those asserted against the Commission, the plaintiffs' claims against Austin in his official capacity also cannot proceed for the reason that the complaint fails to allege a

---

[2] To the extent that the plaintiffs contend that they can maintain an action against Austin in his official capacity "for equitable relief", their underdeveloped contention seems to conflate issues of official capacity and qualified immunity (Dkt. No. 16 at 3).

municipal policy or custom that caused the plaintiffs' injuries. The Court therefore **GRANTS** the motion to dismiss these claims.

### IV. CONCLUSION

In conclusion, the Court:

- **GRANTS** the defendants' Motion to Amend/Correct Motion Title (Dkt. No. 20);
- **GRANTS** the defendants' Motion to Dismiss the claims in Count One of the complaint against the Commission **WITHOUT PREJUDICE** (Dkt. No. 12); and
- **GRANTS** the defendants' Motion to Dismiss the claims in Count One of the complaint against Austin in his official capacity **WITH PREJUDICE** (Dkt. No. 12).

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED:   **August 31, 2018**

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE