IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOSEPH C. BARCUS;
JAMES D. SHACKLEFORD; and
PETER J. SHIPP,
formerly known as Peter L. Shipp;

       Plaintiffs,

v.                                  CIVIL ACTION NO. 1:17CV122
                                           (Judge Keeley)

TERRY AUSTIN,
Sheriff, in his personal capacity,

       Defendant.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]

After he was elected Sheriff of Taylor County, West Virginia, in November 2016, the defendant, Terry Austin ("Austin"), fired the plaintiffs, Joseph C. Barcus ("Barcus"), James D. Shackleford ("Shackleford"), and Peter J. Shipp ("Shipp") (collectively, "the Plaintiffs"), from their jobs in the Sheriff's Office. Barcus, Shackleford, and Shipp sued Austin, alleging they were fired in violation of their constitutional rights because of their support for then-Taylor County Sheriff Terring Skinner during his re-election campaign.

Pending are Austin's motions for summary judgment against all the Plaintiffs (Dkt. Nos. 145, 147), and his motion to strike the

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

**MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]**

Plaintiffs' letter of supplemental authority (Dkt. No. 157).[1] For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** the motions for summary judgment and **DENIES AS MOOT** the motion to strike.

## I. BACKGROUND

### A.   The Facts

The Court recites the facts in the light most favorable to the non-moving parties. See Providence Square Assocs., LLC v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). In mid-2015, Shipp, a maintenance worker for the Taylor County Commission, accepted an offer from Sheriff Skinner to become his secretary (Dkt. No. 145-3 at 12). As Skinner's secretary, Shipp performed basic secretarial or administrative duties for the Sheriff: He answered phones, took messages, issued permits and incident reports, made copies, and greeted members of the public (Dkt. Nos. 150 at 1, 145-3 at 12). In early 2016, Skinner also hired Barcus and Shackleford to work as security officers in the Taylor County Courthouse (Dkt. Nos. 145-2 at 7, 145-9 at 12).

Later in 2016, Skinner, a Democrat, sought re-election as the

---

[1] All docket and page numbers refer to the numbers assigned by the Court's electronic docket.

2

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]

Taylor County Sheriff. Austin, a Republican, opposed him. In the run up to the November election, Barcus, Shackleford, and Shipp supported Skinner's re-election effort in various ways (Dkt. No. 145-2 at 4-5). They erected campaign signs, campaigned door-to-door, and displayed signs on their vehicles and in their yards (Dkt. Nos. 145-2 at 5, 145-3 at 10-11, 145-9 at 12). Despite their efforts, Austin defeated Skinner. Then, after the election but before he assumed the office of Sheriff in January 2017, Austin fired Barcus, Shackleford, and Shipp (Dkt. Nos. 145-4, 145-5, 147-4).

**B.   Procedural History**

In June 2017, the Plaintiffs sued Austin and the Taylor County Commission in the Circuit Court of Taylor County, West Virginia, alleging violations of the First and Fourteenth Amendments to the United States Constitution and Sections 7, 10, and 11 of Article III of the West Virginia Constitution (Dkt. No. 1-1). Following removal of the case in July 2017 (Dkt. No. 1), this Court dismissed all claims against Austin in his official capacity, and also dismissed the Taylor County Commission (Dkt. No. 73). Discovery has concluded and trial is scheduled to commence on July 27, 2020 (Dkt. Nos. 109, 182).

BARCUS, ET AL. V. AUSTIN                                          1:17CV122

MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square, 211 F.3d at 850. The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact

4

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]

could reasonably find for the nonmoving party. Id. at 248-52.

### III. DISCUSSION

A.   Austin's Motion for Summary Judgment on Barcus & Shackleford's
     Claims

1.   First & Fourteenth Amendment Claims Under the United
     States Constitution

In order to resolve Austin's motion for summary judgment on

Barcus and Shackleford's First Amendment claim (Dkt. Nos. 145,

146), the Court must first identify the dispute at the heart of

this case. The parties do not contest what Barcus and Shackleford's

responsibilities were as courthouse security officers. Id. Nor does

Austin contend that these positions were subject to patronage

dismissals or that their right to be free from patronage dismissals

was not clearly established at the time he fired them. Id. What

Austin does contend is that Barcus and Shackleford cannot

demonstrate that their political association with Skinner was a

substantial or motivating factor for their terminations (Dkt. No.

146 at 10-13). He also contends that they cannot rebut proof that

he would have terminated them anyway, regardless of their

association with Skinner, in order to save the county substantial

tax dollars. Id. at 13. Therefore, at bottom, Austin challenges

only Barcus and Shackleford's ability to establish causation. Id.

BARCUS, ET AL. V. AUSTIN                              1:17CV122

MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]

at 8-13.

In the Fourth Circuit, courts employ the same causation analysis for free association and speech claims under the First Amendment. Bland v. Roberts, 730 F.3d 368, 375 (4th Cir. 2013). "The plaintiff bears the initial burden of proving that his exercise of his First Amendment rights was a substantial or motivating factor in the employer's decision to terminate him." Id. (cleaned up) (citations omitted). "And if the plaintiff satisfies that burden, the defendant will avoid liability if he can demonstrate, by a preponderance of the evidence, that he would have made the same employment decision absent the protected expression." Id. (citations omitted).

Here, Austin asserts he had no knowledge that Barcus and Shackleford had supported Skinner for Sheriff, nor did he terminate every employee who supported Skinner (Dkt. No. 146 at 11). He contends that Barcus and Shackleford have no evidence he fired them because they supported Skinner. Id. This argument is without merit for several reasons.

First, Barcus and Shackleford need not proffer direct evidence that Austin knew about their political association with Skinner in order to succeed on their First Amendment claim. See, e.g., Craig

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

**MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]**

v. Bedford Cty., No. 6:17-CV-00028, 2018 WL 3130439, at *7-8 (W.D.

Va. June 26, 2018) (noting that, in the absence of direct evidence,

a jury could still reasonably rely on circumstantial evidence to

conclude that three of the defendants terminated the plaintiff

because of his political activity). It is sufficient if they have

"set forth specific facts showing that there is a genuine issue for

trial." Anderson, 477 U.S. at 256. This they have clearly done.

First, Barcus and Shackleford openly supported Skinner's re-

election effort by erecting campaign signs, campaigning door-to-

door, and displaying signs on their vehicles and in their yards

(Dkt. Nos. 145-2 at 5, 145-9 at 12). And after Austin won the

November 2016 election, but even before he assumed that office in

January 2017, he fired Barcus and Shackleford as courthouse

security officers (Dkt. Nos. 145-4, 145-5). When viewed in the

light most favorable to Barcus and Shackleford, these facts could

persuade a rational trier of fact that Barcus and Shackleford's

political association with Skinner was a substantial or motivating

factor in their terminations. Anderson, 477 U.S. at 248. The fact

that Austin did not terminate every employee who supported Skinner

does not compel a contrary conclusion.

Furthermore, Barcus and Shackleford have sufficiently rebutted

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]

Austin's claim that he would have fired them regardless of their political association with Skinner in order to save substantial tax dollars so as to create a genuine dispute of material fact for trial. Austin attempts to avoid this conclusion by asserting that his elimination of unnecessary courthouse security officers decreased the county's salary expenses by thousands of dollars each month (Dkt. No. 146 at 11), and contends he did so in response to numerous complaints from the community (Dkt. No. 145-1 at 9, 12-13).

Barcus and Shackleford, however, note that——according to Austin's own testimony——these complaints came only from his brother, Marvin Austin, and one of his campaign workers, Darla Sevier (Dkt. Nos. 149 at 2; 145-1 at 12-13, 21). In other words, the complainants were persons closely connected to Austin, not members of the community at large. Moreover, during his deposition, Austin denied that these complaints had anything to do with his decision to fire Barcus and Shackleford (Dkt. No. 145-1 at 13).

Barcus and Shackleford further refute Austin's claim that his actions saved tax dollars by explaining that, after Austin fired them, he re-tasked various employees to perform their work (Dkt. No. 149 at 3). They contend that the salaries for these re-tasked

8

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

**MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]**

employees were not reallocated to the "security budget," effectively understating the amount of money Austin actually spent on courthouse security after he fired them. Id. To support this contention, they generated a spreadsheet summarizing the payroll records by pay period under Austin and compared this data to comparable spending under Skinner (Dkt. No. 149-2).

According to this summary, Skinner spent approximately $2,790 per pay period on courthouse security while Austin spent approximately $2,580 per pay period on courthouse security. Id. at 1. Significantly, Austin's courthouse security expenditures eventually increased to approximately $3,460 per pay period, id., thereby belying any claim that his firing of Barcus and Shackleford saved substantial tax dollars. Although Austin challenges the accuracy and reliability of these exhibits (Dkt. No. 151 at 2-3), it is not this Court's role to weigh and resolve conflicting evidence on summary judgment. Anderson, 477 U.S. at 249 ("[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

2.   **Claims Under Sections 7, 10, and 11 of Article III of the West Virginia Constitution**

Austin also contends that he is entitled to summary judgment

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

**MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]**

on Barcus and Shackleford's state law claims under Sections 7, 10, and 11 of Article III of the West Virginia Constitution (Dkt. No. 146 at 13-20). Before considering these claims, the Court first addresses whether Barcus and Shackleford have stated a plausible Section 16 claim.

## I.   Section 16 Claim

In their response opposing Austin's motion for summary judgment, Barcus and Shackleford "invoke" Sections 7, 11, and 16[2] of Article III of the West Virginia Constitution (Dkt. No. 149 at 8). Their Complaint, however, alleges only violations of Sections 7, 10, and 11, not Section 16 (Dkt. No. 1-1 at 4). Whether or not facts exist that may support a Section 16 claim, "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." Shanahan v. City of Chicago, 82 F.3d 776, 780 (7th Cir. 1996); see also Cumpston v. Cent. Supply Co. of W. Va., No. 1:17CV61, 2018 WL 4855216, at *7 (N.D. W. Va. Oct. 5, 2018) ("[T]he Court will not allow [the plaintiff] to amend his complaint at this late stage to avoid

---

[2] Article 16 states: "The right of the people to assemble in a peaceable manner, to consult for the common good, to instruct their representatives, or to apply for redress of grievances, shall be held inviolate." W. Va. Const. art. III, § 16.

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

**MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]**

summary judgment, especially when those facts where available to him at the outset."). The Court, therefore, declines to find a plausible Section 16 claim in this case.

### ii.   Section 11 Claim

Section 11 of Article III of the West Virginia Constitution states:

> Political tests, requiring persons, as a prerequisite to the enjoyment of their civil and political rights, to purge themselves by their own oaths, of past alleged offences, are repugnant to the principles of free government, and are cruel and oppressive. No religious or political test oath shall be required as a prerequisite or qualification to vote, serve as a juror, sue, plead, appeal, or pursue any profession or employment. Nor shall any person be deprived by law, of any right, or privilege, because of any act done prior to the passage of such law.

W. Va. Const. art. III, § 11. As the United States District Court for the Southern District of West Virginia has recently noted, "Section 11 precedent is sparse, for explicit political and religious tests are rare." Billiter v. Jones, No. 3:19-0288, 2020 WL 118595, at *4 (S.D. W. Va. Jan. 9, 2020) (Chambers, J.). One such example is "an 1866 law requiring attorneys to swear they had not taken up arms against the United States or otherwise supported the Confederacy during the Civil War." Id. (citing Haddad v. Caryl,

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

**MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]**

390 S.E.2d 210, 214 n.2 (W. Va. 1990) (citing Ex parte Hunter, 2 W. Va. 122 (1867))).

Here, Barcus and Shackleford argue that Austin's decision to fire them for supporting his political opponent, a Democrat, "evinces a political test of Republican affiliation . . . ." Id. Their Complaint, however, does not allege that Austin required an explicit or formal political oath from them or any other employee of the Sheriff's Office (Dkt. No. 1-1). Nor is there any such evidence in the case.

To avoid summary judgment, Barcus and Shackleford merely quote Section 11's text in a footnote and claim, without citation to any law or fact, that "Austin violated that scripture in this case" (Dkt. No. 149 at 11 n.3). But this bold assertion falls woefully short of "set[ting] forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.

Critically, Section 11's history and text, and case law discussing Section 11, "indicate [that it] is directed at formal, overt tests established in statutes, regulations, oath requirements, and the like. Claims of unlawful decision-making by an individual based on political belief and affiliation belong under [S]ections 7 and 16." Billiter, 2020 WL 118595, at *4

12

**BARCUS, ET AL. V. AUSTIN**                                    **1:17CV122**

**MEMORANDUM OPINION AND ORDER GRANTING**
**IN PART AND DENYING IN PART THE DEFENDANT'S**
**MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND**
**DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]**

(granting motion to dismiss Section 11 claim). In other words, because Barcus and Shackleford allege biased decision-making by Austin, and not a formal test, their Section 11 claim fails on its merits.[3]

### iii. Section 10 Claim

Barcus and Shackleford's Section 10 claim fares no better. Section 10 states that "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." W. Va. Const. art. III, § 10. This section "requires procedural safeguards against State action which affects a liberty or property interest." W. Va. Bd. of Educ. v. Marple, 783 S.E.2d 75, 85 (W. Va. 2015) (citation omitted). Under West Virginia law, courts must employ a "two-step inquiry to determine whether a state employer infringed on its employee's liberty or property interest: (1) did the employee have a liberty or property interest at stake; and (2) if so, how much process is he/she entitled under [the] Due Process Clause"? Id. (citation omitted).

---

[3] Because Barcus and Shackleford's Section 11 claim fails on its merits, the Court need not address whether there is a state tort claim under Article III of the West Virginia Constitution for money damages.

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]

a.   Property Interest

It is well settled under federal and state constitutional law "that government employment can be a property interest, but the employee 'must have more than a unilateral expectation of it.'" Billiter, 2020 WL 118595, at *3 (quoting "Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)); see also Kessel v. Monongalia Cty. Gen. Hosp. Co., 600 S.E.2d 321, 327-28 (W. Va. 2004) (holding that a property interest "must be more than a unilateral expectation of continued employment"). Indeed, "a person must possess a legitimate claim of entitlement to it——created, for example, by contract or state law." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 307 n.14 (4th Cir. 2006) (citing Roth, 408 U.S. at 577-78).

Here, Barcus and Shackleford's Complaint does not allege a property interest in their employment as courthouse security officers (Dkt. No. 1-1). Nor does it allege any "contracts, statutory provisions, or implied promises from which the Court could infer [their] employment was something other that at-will," Billiter, 2020 WL 118595, at *3, which is presumed under West Virginia law, Younker v. E. Associated Coal Corp., 591 S.E.2d 254, 257 (W. Va. 2003). Tellingly, Barcus and Shackleford never discuss Section 10 in their response opposing summary judgment (Dkt. No.

14

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]

149).

Even assuming they have not conceded the issue, "[a] local government employee serving 'at the will and pleasure' of the government employer has no legitimate expectancy of continued employment and thus has no protectible property interest." Jenkins v. Weatherholz, 909 F.2d 105, 107 (4th Cir. 1990). Accordingly, Barcus and Shackleford's property interest claim under Section 10 cannot withstand summary judgment.

b.   Liberty Interest

"A liberty interest is implicated when the state makes a charge against the individual that might seriously damage his standing and associations in the community or places a stigma or other disability on him that forecloses future employment opportunities." McGraw, 800 S.E.2d at 237 (citation omitted). Under West Virginia law, "a government employer implicates its employee's liberty interest in his/her good name when the following elements are alleged: (1) a stigmatizing statement; (2) which was false; (3) was published, or made accessible to the public; (4) in connection with a serious adverse employment action." Id. at 239. "When these elements are met, the employee must be afforded procedural safeguards under Article III, Section 10 of the West Virginia

15

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

**MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]**

Constitution." Id.

Here, Barcus and Shackleford's Complaint never alleges how Austin's actions implicated their liberty interest (Dkt. No. 1-1), much less any of the four elements required by McGraw. Id. Nor do Barcus and Shackleford discuss Section 10 in their response opposing summary judgment (Dkt. No. 149). Therefore, having failed even to allege the requisite elements of a liberty interest claim, Barcus and Shackleford's claim under Section 10 is not plausible.

### iv. Section 7 Claim

Section 7 states:

> No law abridging the freedom of speech, or of the press, shall be passed; but the Legislature may, by suitable penalties, restrain the publication or sale of obscene books, papers, or pictures, and provide for the punishment of libel, and defamation of character, and for the recovery, in civil actions, by the aggrieved party, of suitable damages for such libel, or defamation.

W. Va. Const. art. III, § 7.

Here, Austin concedes that the protections set forth in Section 7 are coextensive with those of the First Amendment (Dkt. No. 146). Indeed, as the Supreme Court of Appeals of West Virginia has explained, the First Amendment and Section 7 "extend a protection to governmental employees to be free from employment

16

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]

decisions made solely for political reasons." Adkins v. Miller, 421

S.E.2d 682, 683 (W. Va. 1992). Having already concluded that there

are genuine issues of material fact in dispute that preclude

summary judgment as to Barcus and Shackleford's First Amendment

claim, the Court denies as well Austin's motion for summary

judgment on their Section 7 claim.

B.   **Austin's Motion for Summary Judgment on Shipp's Claims**

1.   **First & Fourteenth Amendment Claims Under the United
        States Constitution**

Austin contends that Shipp's First Amendment claim cannot

proceed because his termination was an employment decision

permitted under the Elrod-Branti exception to the general rule

protecting public employees from being fired for their political

associations (Dkt. Nos. 147, 148).[4] And even if Shipp's termination

was not permissible, Austin asserts that he is entitled to

qualified immunity because Shipp's First Amendment right not to be

terminated for his political association with Skinner was not

clearly established at the time of his termination. Id. Both claims

are wholly lacking in merit.

---

[4] Because neither party has invoked the Pickering-Connick doctrine,
the Court need not address it. See Lawson v. Union Cty. Clerk of
Court, 828 F.3d 239, 251-53 (4th Cir. 2016).

17

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]

Generally, the freedom to associate under the First Amendment "prohibits government officials from terminating public employees solely for supporting political opponents." McCaffrey v. Chapman, 921 F.3d 159, 164 (4th Cir. 2019). The Supreme Court of the United States has, however, created an exception to this general rule in Elrod v. Burns, 427 U.S. 347 (1976), which it later clarified in Branti v. Finkel, 445 U.S. 507 (1980).

In Elrod, a plurality of the Supreme Court explained that government officials may lawfully terminate a public employee for his or her political association if he or she holds a policymaking position. 427 U.S. at 367. In Branti, the Supreme Court clarified that "the ultimate inquiry is . . . whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518. It reasoned that "if an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." Id. at 517.

To determine whether political association is a legitimate job requirement, the Fourth Circuit has established a two-step inquiry.

18

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]

Courts must first determine whether the public position at issue involves partisan interests. Stott v. Haworth, 916 F.2d 134, 141 (4th Cir. 1990) (citation omitted). In other words, "does the position involve government decisionmaking on issues where there is room for political disagreement on goals or their implementation?" Id. (citation omitted). If the "first inquiry is satisfied, the next step is to examine the particular responsibilities of the position to determine whether it resembles . . . an office holder whose function is such that party affiliation is an equally appropriate requirement." Id. at 142 (citation omitted).

This inquiry, therefore, requires the Court to review and consider Shipp's duties and responsibilities as Austin's secretary or administrative assistant. See Lawson, 828 F.3d at 248 (reviewing "the general duties of deputies in the Union County Clerk's Office" to determine whether it "satisf[ies] the first prong of Stott"); Snyder v. Blagojevich, 332 F. Supp. 2d 1132, 1136 (N.D. Ill. 2004) ("As a threshold matter, it is essential to clarify what universe of job responsibilities dictates whether a job is within the Elrod-Branti exception.").

Here, the parties vigorously dispute Shipp's job responsibilities. Austin contends they included discussing policies

19

BARCUS, ET AL. V. AUSTIN                                      1:17CV122

**MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]**

or violations of policies, research, and representing the Sheriff to other county officials (Dkt. No. 148 at 3). Shipp, however, asserts he only performed basic secretarial and administrative duties (Dkt. Nos. 150 at 1, 145-3 at 12). There is no written job description for Shipp's former position. Thus, there is a factual dispute about what his job responsibilities included that precludes Austin's claim for qualified immunity at this stage of the litigation.[5] Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003) ("A defendant is entitled to summary judgment on the grounds of qualified immunity when there is no genuine issue of material fact . . . .").

Austin further argues that, because he did not know what Shipp's job title and responsibilities were at the time he fired him (Dkt. No. 148 at 10), it was reasonable for him to believe it was constitutional to terminate Shipp's employment based on political association. Id. at 9-10. It is well established, however, that the Elrod-Branti exception is based in part on the nature of an employee's responsibilities.

In Elrod, the Supreme Court concluded that the political

---

[5] Only after a jury resolves this factual dispute will the Court be able to determine whether Shipp's position satisfies Stott's two-step inquiry as a matter of law.

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]

beliefs of the employees at issue (including, among others, a
process server, bailiff, and security guard), would not interfere
with the discharge of their public duties because they were
"nonpolicymaking, nonconfidential" employees. 427 U.S. at 375. In
Branti, the Supreme Court clarified that the ultimate inquiry is
"whether . . . party affiliation is an appropriate requirement for
the effective performance of the public office involved." 455 U.S.
at 518.

Thus, it was long established prior to Austin's election in
November 2016 that the application of the Elrod-Branti exception
turns on whether the position at issue involves room for political
disagreement, and, if so, whether the employee's political beliefs
would interfere with the discharge of his or her public duties,
making political association an appropriate job requirement. See
Branti, 445 U.S. at 517-18; Stott, 916 F.2d at 141-42. To conclude
otherwise would enable employers to avoid liability simply by
claiming ignorance of an employee's responsibilities. Tellingly,
Austin has cited no case granting qualified immunity to an employer
who terminated an employee——without knowledge of their
responsibilities——based on their political associations or speech
(Dkt. Nos. 148, 152).

BARCUS, ET AL. V. AUSTIN                              1:17CV122

### MEMORANDUM OPINION AND ORDER GRANTING
### IN PART AND DENYING IN PART THE DEFENDANT'S
### MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
### DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]

Austin's reliance on Billingsley v. St. Louis Cty., 70 F.3d 61 (8th Cir. 1995), to rebut this conclusion is misplaced. There, the United States Court of Appeals for the Eighth Circuit held that an administrative assistant to a county councilman did not have a clearly established right to be free from patronage dismissal because she was the "sole" intermediary between the councilman and his constituents and "performed a broad range of duties that dealt with sensitive issues including proposed legislation to county development projects." Billingsley, 70 F.3d at 64. Nevertheless, when determining whether a constitutional right is clearly established, the Supreme Court has warned that "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Tolan v. Cotton, 572 U.S. 650, 656 (2014) (citations omitted).

Here, not only do the parties dispute Shipp's job responsibilities, these disputed responsibilities also differ significantly from those at issue in Billingsley. For example, as a secretary or administrative assistant to the county's chief law enforcement officer, Shipp did not act as the "sole" intermediary between Austin and his constituents because a sheriff primarily acts through his deputies, who are subject to patronage dismissals.

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

**MEMORANDUM OPINION AND ORDER GRANTING**
**IN PART AND DENYING IN PART THE DEFENDANT'S**
**MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND**
**DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]**

See McCaffrey, 921 F.3d 159. Although the position at issue in Billingsley may be similar in name, courts——and thus public employers——must "examine the job duties of the position, and not merely the title, of those dismissed." Jenkins, 119 F.3d at 1165 ("We issue this limitation to caution sheriffs that courts examine the job duties of the position, and not merely the title, of those dismissed."). In this case, where material facts are in dispute, that determination is for the jury not the court.

### 2.   Claims Under Sections 7, 10, and 11 of Article III of the West Virginia Constitution

Austin also contends that he is entitled to summary judgment on Shipp's state law claims under Sections 7, 10, and 11 of Article III of the West Virginia Constitution (Dkt. No. 148 at 12-19).

#### I.   Section 16 Claim

Like Barcus and Shackleford, Shipp invokes Section 16 in his response opposing summary judgment (Dkt. No. 150 at 4); also like Barcus and Shackleford, he never alleged a Section 16 claim in his Complaint (Dkt. No. 1-1). Therefore, Shipp cannot "amend his complaint at this late stage to avoid summary judgment . . . ." Cumpston, 2018 WL 4855216, at *7.

#### ii.   Section 11 Claim

Austin is entitled to summary judgment on Shipp's Section 11

23

BARCUS, ET AL. V. AUSTIN                                    1:17CV122

**MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]**

claim because, like Barcus and Shackleford, Shipp never alleged that Austin required an explicit or formal political oath (Dkt. No. 1-1). Nor is there any evidence otherwise (Dkt. No. 150).[6]

### iii. Section 10 Claim

Austin also is entitled to summary judgment on Shipp's Section 10 claim. As previously discussed, like Barcus and Shackleford, Shipp never alleged a property interest in his employment as a secretary or administrative assistant, and has not made out the requisite elements of a liberty interest claim (Dkt. No. 1-1).

### iv.  Section 7 Claim

Finally, Austin is not entitled to summary judgment on Shipp's Section 7 claim because the protections of Section 7 and the First Amendment are coextensive, and the Court has previously concluded that there is a genuine dispute of material fact on Shipp's First Amendment claim.

## C.  Austin's Motion to Strike

On March 9, 2020, the Plaintiffs filed a letter, which included supplemental authority opposing Austin's motions for summary judgment (Dkt. No. 154). On March 17, 2020, Austin moved to

---

[6] Because Shipp's Section 11 claim fails on its merits, the Court need not address whether there is a state tort claim under Article III of the West Virginia Constitution for money damages.

**BARCUS, ET AL. V. AUSTIN**                                          **1:17CV122**

**MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART THE DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 145, 147] AND
DENYING AS MOOT THE DEFENDANT'S MOTION TO STRIKE [DKT. NO. 157]**

strike the letter because the Plaintiffs failed to obtain leave of Court to file a surreply (Dkt. No. 157). This issue is moot because the Court has not considered the supplemental authority.

### IV. CONCLUSION

For the reasons discussed, the Court:

(1) **GRANTS IN PART AND DENIES IN PART** Austin's motion for summary judgment on Barcus and Shackleford's claims (Dkt. No. 145;

(2) **GRANTS IN PART AND DENIES IN PART** Austin's motion for summary judgment on Shipp's claims (Dkt. No. 147); and

(3) **DENIES AS MOOT** Austin's motion to strike (Dkt. No. 157).

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record.

DATED: April 16, 2020

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE